IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:18-cv-00074-M

ANDREW U.D. STRAW,
                Plaintiff,

v.                                   **OPINION AND ORDER**

STATE OF NORTH CAROLINA,
                Defendant.

RICHARD E. MYERS II, District Judge.

On November 4, 2019, Defendant State of North Carolina ("North Carolina") filed a motion to dismiss, with prejudice, Plaintiff Andrew U.D. Straw's ("Straw") amended complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE 55]. For the reasons explained below, North Carolina's motion to dismiss is GRANTED.

I.    Procedural History

Straw alleges that he was injured by contaminated water that he was exposed to in utero and as a military dependent at Camp Lejeune Marine Corps base in North Carolina. In a separate suit, eventually consolidated in multidistrict litigation ("MDL"), Straw and others sued the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for myriad injuries allegedly stemming from this contaminated water. *See generally In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318 (N.D. Ga. 2016). After years of litigation and an interlocutory appeal to the Eleventh Circuit to interpret North Carolina's statute

1

of repose,[1] the government's motion to dismiss all plaintiffs' claims was ultimately granted on three distinct grounds: (1) the applicability of North Carolina's statute of repose, (2) the applicability of the *Feres* doctrine to the FTCA, for servicemember plaintiffs, and (3) the applicability of the discretionary function doctrine to the FTCA. *Id.* at 1362-63. The dismissal was upheld on appeal. *In re Camp Lejeune, N. Carolina Water Contamination Litig.*, 774 Fed. App'x 564, 568 (11th Cir. 2019), *petition for cert. filed & docketed, Bryant v. United States*, No. 19-982 (Feb. 5, 2020). The Eleventh Circuit relied on its prior interpretation of North Carolina's statute of repose and did not reach the arguments of either the *Feres* doctrine or discretionary function. *Id.* at 566.

Admittedly aware that an attempt to relitigate the Eleventh Circuit's holding raises issues of res judicata and collateral estoppel, Straw explicitly disclaims making a collateral attack on the MDL case, and raises what he states are independent claims facially attacking the North Carolina statute of repose in an effort to obtain compensatory damages. Straw argues that the Northern District of Georgia's application of the North Carolina statute of repose in the MDL renders the

---

[1] The Eleventh Circuit recognized that in 2014 the North Carolina legislature amended the statute of repose to add the following language: "The 10-year period set forth in G.S. 1–52(16) shall not be construed to bar an action for personal injury, or property damages caused or contributed to by ... the consumption, exposure, or use of water supplied from groundwater contaminated by a hazardous substance, pollutant, or contaminant." *Bryant v. United States*, 768 F.3d 1378, 1382 (11th Cir. 2014). At the time, the General Assembly specified that this amendment applied to any actions "filed, arising, or pending on or after June 20, 2014." *Id.* Nevertheless, the Eleventh Circuit found that the amendment should not apply retroactively because it "substantively amended the statute of repose to create an exception for groundwater contamination and, as a result, can only apply prospectively, lest [the amendment] divest the Government of a vested right." *Id.* at 1385. Furthermore it concluded that the statute, prior to amendment, did not contain an exception for latent diseases. *Id.* When the Fourth Circuit took up this issue two years later it disagreed, confirming its interpretation that the statute of repose would not apply to bar claims arising from disease. *Stahle v. CTS Corp.*, 817 F.3d 96, 100, 104 (4th Cir. 2016).

2

State of North Carolina independently and monetarily liable for his injuries, creating a new cause of action here. Straw now brings this action alleging that the North Carolina statute of repose, N.C. Gen. Stat. § 1-52(16), violates Articles I and II of the United States Constitution by interfering with the right of the United States to govern military bases, creating a claim against North Carolina for relief as a violation of the Due Process clause of the Fourteenth Amendment. DE 17 ¶ 16. He also alleges that the North Carolina statute of repose violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, due to his assertion that people with disabilities are more likely to be impacted by the statute. DE 17 ¶ 15.

Sixteen motions are currently pending before this Court: Straw's motion for summary judgment [DE 31]; North Carolina's motion to defer summary judgement briefing/hearing [DE 35]; Straw's motion to supplement his motion for summary judgment with an affidavit on damages [DE 41]; Straw's motion for the acceptance of memorandum of law in record [DE 42]; Straw's motion to supplement his motion for summary judgment with an affidavit on damages [DE 43[2]]; Straw's motion to notice, enter statements into record [DE 45]; Straw's motion for the acceptance of intervenor statements under Fed. R. Civ. P. 24 [DE 46]; Straw's motion for declaratory judgment [DE 47]; Straw's motion to extend time for Rule 26(f) conference [DE 49]; North Carolina's motion to dismiss plaintiff's amended complaint [DE 55]; Straw's motion to allow a sur-reply to respond to defendant's motion to dismiss [DE 63]; Straw's motion for Fed. R. Civ. P. 37 relief [DE 68]; Straw's motion to notice family damaged and motion to represent family [DE 72]; Straw's motion for Rule 37(a)(4) relief [DE 73]; Straw's motion to notice JMPL, 5.1 &

---

[2] This appears to be a duplicate of DE 41.

19(a)(2) [DE 75]; and Straw's motion to take notice of US Supreme Court filing and allow petition for certiorari into the record, including statements explaining it [DE 78].

Upon consideration of the pleadings, the parties' arguments, and for the reasons discussed below, North Carolina's motion to dismiss is GRANTED. This Court dismisses each of the Straw's claims for failure to state a claim on which relief can be granted. The Court will next address the legal standard for taking judicial notice and why Straw's various motions for notice necessarily fail. The granting of North Carolina's motion to dismiss, among other things, renders the other motions pending before this Court moot.

II. Motion to Dismiss Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In doing so, the court must accept all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678; *see also Giarratano*, 521 F.3d at 302. Nor must a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments."

*E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678. Though Straw is a licensed attorney,[3] the court will construe the allegations in his pro se complaint liberally. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

III. Analysis

    A. Straw's Constitutional Claims

Straw alleges that North Carolina's statute of repose interferes with and infringes upon the federal government's exclusive power to control the military and its personnel, specifically the legislative and executive branches of government under Articles I and II of the United States Constitution. DE 17 ¶ 16. Straw also seeks compensatory damages from North Carolina on the theory that North Carolina's statute of repose deprived him of the right to receive compensation for the injuries he suffered under the Federal Tort Claims Act ("FTCA") and that this was a direct violation of his right to due process of law under the Fourteenth Amendment. DE 17 ¶¶ 8, 14.

Generally, "the United States is immune from suit unless it waives that immunity." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341 (4th Cir. 2014). One such instance where the United States has waived its immunity is in the context of torts committed by federal employees while acting within the scope of their employment. Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*;

---

[3] Straw is licensed and admitted to practice law in Virginia and is in "active" status. *See* Virginia State Bar Lawyer Directory, http://member.vsb.org/attsearch/search.aspx.

*see also In re KBR*, 744 F.3d at 341. Importantly, the United States may be liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b)(1) (emphasis added); § 2674. However certain exceptions apply, including the discretionary function exception. § 2680.

The allegations pled by Straw, even construed in the light most favorable to him, *Mylan*, 7 F.3d at 1134, are insufficient to state a claim for relief and his framing of the issue misses the mark. North Carolina has not "reached into Camp LeJeune and dictated through its law that poisoned families will not be compensated for their suffering." DE ¶ 16. Rather, due to what turned out for plaintiffs to be an unfortunate transfer of the MDL to the Northern District of Georgia, it was the Eleventh Circuit's interpretation of North Carolina's statute of repose and its subsequent amendment that so held. *Bryant*, 768 F.3d at 1385. Under the FTCA, Congress explicitly chose to make the United States liable "in the same manner and to the same extent as a private individual under like circumstances," § 2674, and for the United States to be governed by the law of the state where the alleged harm occurred, §§ 1346(b)(1), 2674, in this case North Carolina. North Carolina's statute of repose sets limits on the operation of its tort laws applicable to all plaintiffs in the state for the benefit of all defendants in the state. The decision to track state law was Congress' and by that decision North Carolina did not violate Articles I and II of the Constitution.

The Fourth Circuit has expressly held that statutes of repose are subject to rational basis review under the Fourteenth Amendment: "Rational basis is the proper test, because the statute

of repose does not infringe a fundamental right nor does it involve a suspect classification." *Barwick v. Celotex Corp.* 736 F.2d 946, 958 (4th Cir. 1984). "Statutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups. Such statutes serve a necessary function on the fair administration of justice." *Id.* at 956. Fatal to Straw's claim is the Fourth Circuit's decision to uphold North Carolina's legacy ten-year statute of repose against an equal-protection challenge arguing the statute unfairly deprived plaintiffs with diseases equal protection of the laws, as diseases take years to manifest. *Id.* at 955, 958 ("The plaintiff's argument that he has been denied equal protection because there is no legitimate public purpose to § 1–15(b) and because the statute promotes the interest of special groups over injured parties and the public in general is without merit. Repose in the law is a legitimate public concern, and the repose granted after ten years by § 1–15(b) is balanced against the plaintiff's expanded rights under the statute.").

Indeed, statutes of repose are relatively commonplace and have consistently been upheld against Fourteenth Amendment challenges. *See, e.g., Koch v. Shell Oil Co.*, 52 F.3d 878, 883 (10th Cir. 1995) (rejecting due-process, equal-protection, and separation-of-powers challenges to Kansas' statute of repose); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1225 (10th Cir. 1991) (finding Indiana statute of repose was not unconstitutional under state or federal constitutions); *Eddings v. Volkswagenwerk, A.G.*, 835 F.2d 1369, 1373-75 (11th Cir. 1988) (upholding Florida's 12-year products liability statute of repose against due-process and equal-protection challenges), *cert. denied*, 488 U.S. 822 (1988); *Bowman v. Niagara Machine & Tool Works, Inc.*, 832 F.2d 1052, 1053-55 (7th Cir. 1987) (upholding the constitutionality of Indiana's 10-year products liability statute of repose against equal-protection challenge); *Wayne v. Tenn.*

7

*Valley Auth.*, 730 F.2d 392, 402-04 (5th Cir. 1984) (upholding the constitutionality of Tennessee's 10-year limitation period for product liability actions against equal-protection and due-process challenges), *cert. denied*, 469 U.S. 1159 (1985).

In the absence of a federal constitutional violation by the state of North Carolina,[4] Straw is caught by the differing interpretations of the North Carolina statute in the Fourth and Eleventh Circuits, *Stahle* on the one hand and *Bryant* on the other. This Court is not without sympathy for Straw. Had the case not been transferred to the Eleventh Circuit, and had Fourth Circuit law applied, the Fourth Circuit's holding in *Stahle* that the North Carolina statute of repose contains an exception for latent disease might have led to a different result regarding the government's statute-of-repose defense.[5] However, Straw cannot now claim that he has been denied due process of law simply because the Eleventh Circuit's interpretation of a North Carolina statute barred his claim. As the Seventh Circuit said, "[s]uch an approach confuses 'access' with 'success,' and [Straw] is not constitutionally entitled to the latter." *Bowman*, 832 F.2d at 1054.

---

[4] Though the parties did not brief this, there may be an issue of collateral estoppel. Straw states that the constitutional claims he raises here were before the Northern District of Georgia at the time it made its decision: "In fact, I did raise the North Carolina constitutional questions in the U.S. District Court cases that were consolidated into the MDL-2218 case in the Northern District of Georgia. When the statute of repose was applied and the cases dismissed, there was not one single mention of my arguments in the original complaints, which were still hot and have not been resolved with any ORDER." DE 75 ¶ 4.

[5] Straw admits that it was not North Carolina's act of passing its statute of repose that was the true cause of his claimed injury, it is his claim that "the U.S. government improperly used the N.C. law to obtain an unjust result in the MDL." DE 75 ¶ 30.

8

### B. Straw's ADA & Rehabilitation Act Claims

Straw also raises a claim under the ADA, alleging that North Carolina's statute of repose disparately affects disabled people, because they are more likely to bring a tort claim than people without disabilities. *See, e.g.*, DE 8 ¶ 5 ("[A] statute of repose is overwhelmingly and disproportionately directed at people with injuries and disabilities by definition."). In his amended complaint, Straw argues that because the Northern District of Georgia "used the North Carolina Statue of repose and/or statute of limitations to reject all claims in the MDL, I now challenge these state laws as being discriminatory toward people with disabilities, in particular, myself." DE 17 ¶ 11. He raises a similar claim under the Rehabilitation Act of 1973. *Id.* ¶ 12.

The Americans with Disabilities Act ("ADA") of 1990 and the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 *et seq.*, were enacted to protect the rights of disabled Americans and "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA targeted several distinct areas for equal opportunity: employment (Title I), public services (Title II), public accommodations (Title III), and telecommunications (Title IV). *See* 42 U.S.C. §§ 12111-17 (employment); §§ 12131-65 (public services); §§ 12181-89 (public accommodations); 47 U.S.C. §§ 225, 611 (telecommunications). Title II prohibits the exclusion from participation in or the denial of the benefits of the services, programs, or activities of a public entity, or the discrimination by any such entity because of a person's disability. 42 U.S.C. § 12132. Public entity is defined to include state governments. § 12131(1)(A). This section is enforceable through an implied private right of action. *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002).

The ADA's precursor was the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and in part explicitly prohibits disability discrimination by recipients of federal funding. 29 U.S.C. §

9

794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."). Just as with Title II of the ADA, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), is enforceable through an implied private right of action. *Barnes*, 536 U.S. at 184-85.

Because of the similar goals and language of the two statutes, the same structure of substantive analysis applies to both. *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995)). In order to establish a violation of either the ADA or the Rehabilitation Act, a plaintiff must allege that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir. 1999) and *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 & n.9 (4th Cir. 1995)).

Construing all factual allegations in the light most favorable to Straw, *see Mylan*, 7 F.3d at 1134, through the recounting of his personal, medical history in the affidavit attached to his amended complaint and two letters incorporated therein, *see Tellabs*, 551 U.S. at 322, Straw has alleged sufficient facts to satisfy the first prong. However, Straw has failed to allege sufficient facts to satisfy the second or third prongs. Specifically, Straw's amended complaint does not establish facts to show that he was denied equal opportunity to receive a public service or participate in a public program or activity. Even interpreting the language in § 12132 as a catch-

all to apply to all actions of a state government, *see Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 337-39 (4th Cir. 2012), Straw has not alleged any facts to demonstrate that either North Carolina's enactment of a statute of repose or the "failure to adjust" it to allow for his claims, DE 17 ¶ 13, was discriminatory. Nor does he acknowledge that North Carolina did take measures to "adjust" the statute to specifically account for the type of claim Straw originally brought against the United States—it was just not interpreted that way by the Eleventh Circuit. *See Bryant*, 768 F.3d at 1382. Furthermore, limitations periods are routinely applied to bar claims under the disability discrimination statutes themselves. *See, e.g., A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347-48 (4th Cir. 2011) (applying Virginia's one-year limitations period to ADA claim); *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224-25 (4th Cir. 1993) (applying Virginia's one-year limitations period to Rehabilitation Act claim); *Sharkey v. O'Neal*, 778 F.3d 767, 770-71 (9th Cir. 2015) (applying California's three-year statute of limitations to parolee's Title II ADA claim and collecting cases from the Second, Third, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits that have applied various state limitations periods to ADA and/or Rehabilitation Act claims).

Though it has never decided the issue, the Fourth Circuit has pointed out that courts have construed Title II of the ADA to allow a plaintiff to pursue a disparate-impact claim. *A Helping Hand, LLC v. Balt. Cty.*, 515 F.3d 356, 362 (4th Cir. 2008) (citing two cases from the Seventh and Second Circuits); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003) (recognizing disparate-impact claims in the ADA-employment context: "practices that are facially neutral but that in fact fall more harshly on one group than another and cannot be justified by business necessity"). Assuming for purposes of this analysis that a disparate-impact ground for relief under

Title II of the ADA does exist,[6] other than his conclusory statements Straw makes no attempt to explain or establish facts to demonstrate why or how a neutral statute of repose, designed to bar suits for personal injury or property damage after a certain period of time, disparately impacts people with disabilities. Therefore, Straw's claims cannot withstand a motion to dismiss.

### C. FTCA's Discretionary Function Exception

The discretionary function exception to the FTCA reclaims governmental immunity from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019). The exception has been used in the Eastern District of North Carolina to dismiss factually similar claims alleging injury and death due to the exposure to contaminated water at Camp Lejeune. *See, e.g., Tate v. Camp Lejeune*, Case No. 4:19-CV-91-D, 2019 WL 7373699, at *2 (E.D.N.C. Dec. 30, 2019); *but see Jones v. United States*, 691 F. Supp. 2d 639, 642-43 (E.D.N.C. 2010) (finding the discretionary function exception did not apply because during part of the relevant time period the Department of Navy was on notice of the presence and toxicity of chemicals in the water supply and specific instructions were in place regarding the types of chemicals allegedly causing injury to this specific plaintiff); John W.

---

[6] When the Supreme Court made its pronouncement that "[b]oth disparate-treatment and disparate-impact claims are cognizable under the ADA," *Raytheon*, 540 U.S. at 53, it supported this statement by pointing to the broad definition of discrimination under Title I of the ADA that includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability" and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability," 42 U.S.C. § 12112(b). Such an expansive definition of discrimination does not appear in Title II of the ADA, suggesting that there may not be a cognizable claim for disparate impact under that title.

Hamilton, *Contamination at U.S. Military Bases: Profiles and Responses*, 35 Stan. Envtl. L.J. 223, 238-39 (2016) ("Federal courts are split over whether pollution at military bases and notification of off-base residents about known pollution falls within the discretionary function of government employees. . . . Among the federal circuits, the Tenth Circuit is one of the most consistent about preserving discretionary immunity and the Ninth Circuit is the most consistent about discarding discretionary immunity.").

Assuming *arguendo* a cognizable constitutional, ADA, and/or Rehabilitation Act claim had been properly pled to defeat the applicability of North Carolina's statute of repose to bar Straw's claims, his underlying grievances against the United States failed on an independent ground: the discretionary function exception to the FTCA. *In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1362-63 (N.D. Ga. 2016). Without deciding the adequacy of the Northern District of Georgia's analysis of the applicability of the discretionary function exception, Straw's case would still have been dismissed by the Northern District of Georgia. *Id.* at 1364 ("[F]or all practical purposes, there is no other forum where the Plaintiffs could bring these claims without meeting the same sovereign immunity obstacle under the discretionary function exception."). This alternative ground for dismissal was never reversed on appeal and remains the law of the case which will not be second-guessed here. *In re Camp Lejeune*, 774 Fed. App'x at 566.

IV. Judicial Notice

During the course of this litigation, Straw submitted several motions to notice, namely: Straw's motion to notice, enter statements into record [DE 45]; Straw's motion to notice family damaged and motion to represent family [DE 72]; Straw's motion to notice JMPL, 5.1 & 19(a)(2) [DE 75]; and most recently Straw's motion to take notice of US Supreme Court filing and allow

13

petition for certiorari into the record, including statements explaining it [DE 78]. Broadly, these motions request that the court accept as fact (1) a link between Straw and his family's health issues and the contaminated water at Camp Lejeune [DE 45]; (2) statements about Straw's brother and his schooling, military service, work as a healthcare professional, health issues and their link to the contaminated water at Camp Lejeune [DE 72]; (3) that Straw was exposed to contaminated water at Camp Lejeune when he was two days old and at another military installation in Jacksonville, Florida, along with other statements about what should have happened in the prior litigation [DE 75]; and (4) that a petition for certiorari was filed in the Supreme Court along statements describing the petition and what it represents [DE 78]. The court will treat these as requests for judicial notice.

A "court may judicially notice a fact that is not subject to reasonable dispute because it is: (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The inquiry turns on the fact's indisputability. For example, courts may properly take judicial notice of information on state and federal government websites and frequently do. *See, e.g., United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (citing cases from the Fourth, Tenth, and Fifth Circuits); *see also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (noticing statistics on an official redistricting website of the Virginia Division of Legislative Services). In *Garcia*, the Fourth Circuit determined that the district court acted well within its discretion when it took judicial notice of the United States Citizens and Immigration Services website, "a source whose accuracy cannot reasonably be questioned," particularly the section of the site "describ[ing] in general terms the process for naturalization." *Garcia*, 855 F.3d at 621. Courts also may properly

14

take judicial notice of proceedings in other courts and the contents of court records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing cases from the Eleventh, Tenth, Seventh, and Sixth Circuits).

However, "judicial notice must not be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015). In fact, the Fourth Circuit has declined to judicially notice documents when "[t]he parties clearly and reasonably disagree about the meaning to be ascribed to" them. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009).

The statements of which Straw requests this court to take judicial notice are disputed facts, *see, e.g.*, North Carolina's objection to Straw's motion to take notice, enter statements into the record [DE 48]; North Carolina's objection to Straw's motion to take notice re: family damaged [DE 76], are not generally known within the court's territorial jurisdiction, and cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Putting aside other issues raised by North Carolina—such as Straw's failure to comply with the Local Rules, relevance, the need for personal knowledge, and hearsay—most of the statements involve complex questions of medical causation to establish a link between allegedly contaminated water, exposure in utero and during infancy, and the long-term health consequences of such exposure. These assertions not only need to be proven but will likely require expert testimony. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 226 F. Supp. 3d 557, 569-70 (D.S.C. 2017) ("While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside

common knowledge and lay experience."). For these reasons, Straw's statements are inappropriate for judicial notice.

V. Conclusion

For the reasons discussed above, Straw has failed to state a claim upon which relief can be granted against North Carolina. Thus, the Court GRANTS North Carolina's motion to dismiss with prejudice [DE 55]. This Court's order temporarily staying discovery until ten (10) days after an order determining the outcome of North Carolina's motion to dismiss [DE 89] is hereby vacated. The remaining pending motions are disposed of as follows:

- Straw's motion for summary judgment [DE 31] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- North Carolina's motion to defer summary judgement briefing/hearing [DE 35] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- Straw's motion to supplement his motion for summary judgment with an affidavit on damages [DE 41] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- Straw's motion for the acceptance of memorandum of law in record [DE 42] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- Straw's motion to supplement his motion for summary judgment with an affidavit on damages [DE 43[7]] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

---

[7] This appears to be a duplicate of DE 41.

- Straw's motion to notice, enter statements into record [DE 45] is DENIED as an improper request for judicial notice;

- Straw's motion for the acceptance of intervenor statements under Fed. R. Civ. P. 24 [DE 46] is DENIED as improper policy statements immaterial to the matter in issue;

- Straw's motion for declaratory judgment [DE 47] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- Straw's motion to extend time for Rule 26(f) conference [DE 49] is DENIED as moot due to the Rule 26(f) conference held by the parties on October 17, 2019, as indicated in the parties' joint Rule 26(f) report [DE 54];

- Straw's motion to allow a sur-reply to respond to defendant's motion to dismiss [DE 63] is GRANTED and was considered by this Court in its ruling on North Carolina's motion to dismiss;

- Straw's motion for Fed. R. Civ. P. 37 relief [DE 68] is DENIED as moot due to this Court's order granting North Carolina an extension of time to file its response to Straw's first request for admissions [DE 71];

- Straw's motion to notice family damaged and motion to represent family [DE 72] is DENIED as an improper request for judicial notice;

- Straw's motion for Rule 37(a)(4) relief [DE 73] is DENIED as moot due to the granting of North Carolina's motion to dismiss [DE 55];

- Straw's motion to notice JMPL, 5.1 & 19(a)(2) [DE 75] is DENIED as an improper request for judicial notice; and

- Straw's motion to take notice of US Supreme Court filing and allow petition for certiorari into the record, including statements explaining it [DE 78] is GRANTED IN PART AND

DENIED IN PART; the Court will take judicial notice of the petition for certiorari filed with the Supreme Court as a court document that speaks for itself, *Colonial Penn*, 887 F.2d at 1239, but will not take judicial notice of the factual statements made by Straw describing the petition or what it represents.

The clerk shall close the case.

SO ORDERED this the 3rd day of March, 2020.

*Richard E Myers II*
RICHARD E. MYERS II
U.S. DISTRICT COURT JUDGE